# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 16, 2009      Decided November 6, 2009

No. 08-5396

CAMDEN COUNTY COUNCIL ON ECONOMIC OPPORTUNITY,
APPELLANT

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES AND KATHLEEN SEBELIUS, SECRETARY, UNITED
STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(Civ. No. 07-1835)

———

*Robert A. Graham* argued the cause for appellant. With
him on the briefs was *Edward T. Waters*.

*Robin Meriweather*, Assistant United States Attorney,
argued the cause for appellees. With her on the brief were *R.
Craig Lawrence*, Assistant United States Attorney, and
*Channing D. Phillips*, Acting United States Attorney.

Before: ROGERS and KAVANAUGH, *Circuit Judges*, and
WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*:  Under the Head Start program, the Federal Government grants money to certain local organizations that provide pre-school services to low-income children.  Camden County Council on Economic Opportunity was a Head Start grantee that provided pre-school services to children in the Camden, New Jersey area.  During a regularly scheduled review in 2005, the Department of Health and Human Services, which administers Head Start, found several safety-related deficiencies involving "undesirable and hazardous materials" on the playgrounds at Camden sites.  After Camden failed to sufficiently correct the problems within the required 30-day period, HHS terminated Camden's grant.  Camden then filed suit, challenging HHS's decision as arbitrary and capricious under the Administrative Procedure Act.  In a thorough opinion, the District Court held that HHS acted lawfully when it ended Camden's grant.  We agree and therefore affirm.[1]

I

In 1981, Congress passed and President Reagan signed the Head Start Act, Pub. L. No. 97-35, 95 Stat. 499 (codified as amended at 42 U.S.C. §§ 9831-9852a).  The Act authorizes

---

[1] HHS separately found that Camden had failed to correct several non-safety-related deficiencies within the 90-day period mandated by statute for those deficiencies.  Because we find that HHS acted properly in terminating the grant based on the safety-related deficiencies, and because, as Camden acknowledges, termination of a Head Start grant may be based on a single uncorrected deficiency, *see* Tr. of Oral Arg. 13, we need not address the issues raised by Camden with respect to the non-safety-related deficiencies.

federal funding for local organizations that provide services to low-income pre-school children.

Under the Act, Head Start grantees undergo HHS performance reviews every three years. 42 U.S.C. § 9836a(c). During those evaluations, HHS personnel determine whether a grantee's Head Start program is meeting certain statutory and regulatory obligations pertaining to safety, quality, and the like. *Id.*; *see also* 45 C.F.R. Part 1304. If a grantee does not meet the requirements, HHS sends the grantee a notice detailing the deficiencies. The notice sets a date by which the grantee must either correct its deficiencies or face termination of its grant; the length of the corrections period depends on the danger posed by the deficiency and on the time the grantee reasonably needs to correct the deficiency. 42 U.S.C. § 9836a(e)(1)(B). After the relevant period for corrective action has elapsed, HHS conducts a follow-up review. *Id*. § 9836a(c)(1)(C). If the follow-up review determines that the grantee failed to remedy its deficiencies, HHS ends the grant. *Id.* § 9836a(e)(1)(C).

Camden County Council on Economic Opportunity was a Head Start grantee serving some 1300 children in 22 facilities in Camden, New Jersey. According to Camden, it received about $13 million annually for its Head Start program.

During a 2005 performance review, HHS found various deficiencies at Camden. Several of the deficiencies related to safety issues and thus were considered more serious under the Act. Most relevant for present purposes, the HHS team observed splinters and rusty nails at one Camden playground and trash cluttering another playground. Based on that evidence, HHS determined that Camden was not meeting its regulatory obligation to keep its sites "free of undesirable and

hazardous materials and conditions." 45 C.F.R. § 1304.53(a)(10)(viii).

HHS required Camden to remedy this safety-related deficiency within 30 days. After the 30-day period elapsed, HHS conducted follow-up reviews, which determined, among other things, that Camden had not successfully remedied this deficiency. HHS therefore terminated Camden's grant.

Camden appealed the termination of funding to HHS's Departmental Appeals Board, but the Board ruled in favor of the agency. Camden subsequently brought suit in the District Court; the court likewise rejected Camden's arguments. Camden appealed from the grant of summary judgment. Our review of the District Court's decision is de novo.

II

According to Camden, HHS acted arbitrarily and capriciously and thus violated the Administrative Procedure Act when it terminated Camden's funding. Camden contends that it corrected the deficiency at the sites specifically identified in the initial HHS notice – the Hayes and Charleston sites – and was improperly denied funding based on a later-discovered problem at a different site, Lois I.

In its initial review, HHS found that some of Camden's sites "had outdoor areas that were not secured or cleaned to prevent the children from being injured." Head Start Review Report 5 (Sept. 12, 2005) (J.A. 145). HHS cited Camden's Charleston playground for the presence of "splinters, rusty nails, and leaves" and Camden's Hayes site for being "cluttered with trash." *Id*. Both of those problems, HHS stated, violated Camden's obligation to keep indoor and outdoor premises "cleaned daily and kept free of undesirable

and hazardous materials and conditions." *Id.* (quoting 45 C.F.R. § 1304.53(a)(10)(viii)). Classifying this as a deficiency that threatened the "health or safety of staff or program participants," 42 U.S.C. § 9836a(e)(1)(B)(i), HHS afforded Camden 30 days to remedy the problem.

After the corrective period had expired, HHS performed a follow-up review. It found Camden's deficient playground sites "Not Corrected." Follow-Up Head Start Review Report 16 (Apr. 9, 2006) (J.A. 110). Although acknowledging that the Charleston and Hayes sites were "now free of splinters and rusty nails," HHS nonetheless deemed Camden's deficiency uncorrected in light of similar problems at another Camden site – specifically, the presence of "trash" and a "pile of old wood planks with rusty nails sticking out" of them at the Lois I facility. *Id.* at 16-17 (J.A. 110-11). Based on this unremedied safety-related deficiency, HHS terminated Camden's grant.

Camden says it's unfair – and arbitrary and capricious – to terminate its funding based on later-discovered problems at the Lois I site. Although Camden's argument is not without some force, it ultimately misconstrues the nature of a "deficiency" for purposes of the Head Start Act.

At the time of Camden's performance review, the Head Start Act did not define the term "deficiency." 42 U.S.C. § 9832 (2000).[2] But HHS had promulgated a regulation

---

[2] Congress has since amended the Head Start Act to define a deficiency as "a systemic or substantial material failure of an agency in an area of performance" involving any of several enumerated program characteristics, including "health, safety, or civil rights of children or staff." Improving Head Start for School Readiness Act of 2007, Pub. L. No. 110-134, § 3(a)(5), 121 Stat. 1363, 1364 (to be codified at 42 U.S.C. § 9832(18)).

interpreting the Act. And that regulation defines a "deficiency" broadly as an "area or areas of performance" in which a Head Start grantee "is not in compliance with State or Federal requirements." 45 C.F.R. § 1304.3(a)(6)(i). HHS's regulation is permissible and binding under the principles set forth in *Chevron v. Natural Res. Def. Council*, 467 U.S. 837 (1984). Consistent with the HHS regulation, moreover, HHS's Departmental Appeals Board has interpreted "deficiency" to denote a structural or systemic problem, rather than simply a manifestation of a deficiency at a particular site. *See First State Cmty. Action Agency, Inc.*, Docket No. A-02-122, Decision No. 1877, at 78-79 (May 1, 2003); *Norwalk Econ. Opportunity Now, Inc.*, Docket No. A-05-92, Decision No. 2002, at 17 (Nov. 28, 2005).

In short, the plain terms of the HHS regulation required Camden, after it received the initial notice, to ensure that it did not have "undesirable and hazardous materials and conditions" at any of its playgrounds, not merely at the Hayes and Charleston playgrounds. Camden failed to comply with that obligation.

We also reject Camden's related argument that it lacked proper notice of the corrections required at the Lois I site. To be sure, the Act generally requires notice and an opportunity for corrective action before a grantee may lose its funding. Here, however, Camden received such notice: HHS's initial deficiency letter informed Camden that it was not meeting its obligation to maintain sites "free of undesirable and hazardous materials." Head Start Review Report 5 (Sept. 12, 2005) (J.A. 145) (quoting 45 C.F.R. § 1304.53(a)(10)(viii)). That letter, combined with HHS's regulations and its Departmental Appeals Board rulings, afforded Camden sufficient notice that all of its playgrounds had to be free of "undesirable and hazardous materials" by the time of the

follow-up review. As HHS's Departmental Appeals Board explained, the review process does not allow a grantee "to play cat and mouse" by correcting problems at one location "while allowing other premises to be or become noncompliant or by correcting one set of hazards while allowing similar hazards to exist." Docket No. A-07-90, Decision No. 2116, at 16 (Sept. 25, 2007) (J.A. 45).

\* \* \*

We affirm the judgment of the District Court.

*So ordered.*